United States Court of Appeals
Fifth Circuit

**F I L E D**

January 25, 2006

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

_____

m 04-31171

_____

LUV N' CARE, LTD.,

Plaintiff-Appellant,

VERSUS

INSTA-MIX, INC.; UMIX, INC.; UMIXPRODUCTS, INC.;
UMIX SPORTS, INC.; UMIXPRO; AND UMIXBABY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before GARWOOD, SMITH, and DEMOSS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Luv n' care, Ltd. ("Luv n' care"), a Louisiana corporation, appeals the dismissal of its suit against Insta-Mix, Inc., and several related entities (collectively "Insta-Mix"), citizens of Colorado, for lack of personal jurisdiction. We reverse and remand.

I.

Luv n' care is an international corporation based in Monroe, Louisiana, that specializes in the design, manufacture, and sale of a variety of infant care products. Insta-Mix is a small Colorado corporation that holds the patent on a two-chambered plastic bottle with a freezable core, for use by both athletes and children. The design of the straw cap of Insta-Mix's bottle allegedly bears resemblance to a

bottle cap produced by Luv n' care.[1]

Insta-Mix has sold 82,224 of its patented bottles to Wal-Mart and a few other vendors. Although Wal-Mart resells the product at its retail locations, Insta-Mix does not ship the product directly to Wal-Mart stores but, instead, trucks or third-party carriers assigned by Wal-Mart transport the bottles from Insta-Mix's dock in Colorado Springs to one of twenty-six distribution centers nationwide.

The vendor agreement that gives Wal-Mart the right to purchase and retail these bottles indicates that Wal-Mart assumes ownership of the bottles when they are loaded in Colorado Springs. The agreement also mentions several possible distribution centers, but none in Louisiana. Wal-Mart transported 3,696 copies of the bottle, or approximately 65 shipments, with total revenue to Insta-Mix of $8,923.20, to its distribution center in Opelousas, Louisiana.

Insta-Mix received and filled purchase orders from Wal-Mart via an "Electronic Data Interchange" ("EDI") system, which contains information regarding the price, quantity, and destination of each shipment. Once an order is filled, the EDI system automatically sends to Wal-Mart an electronic invoice that contains the letterhead of an Insta-Mix-related entity and the destination address.

The record contains several invoices with a "send to" location of the Wal-Mart distribution center in Opelousas. Insta-Mix alleges that it had no knowledge of the destination of the products until it printed out information from

the EDI system in response to a discovery request in this litigation. It appears that eventually some of Insta-Mix's bottles reached Wal-Mart stores in Louisiana, repackaged under the Wal-Mart trade name.

It is undisputed that Insta-Mix has no employees or agent for service of process in Louisiana and conducts no direct sales or marketing there. Rather, its only contact with Louisiana is its sales of items to Wal-Mart.

II.

Luv n' care sued Insta-Mix for copyright infringement, 17 U.S.C. § 101 *et seq.*, and trademark dilution and unfair competition under the Lanham Act, 15 U.S.C. §§ 1125-(a)(1)(A) and (B). Insta-Mix moved to dismiss under Federal Rule of Civil Procedure 12(b) (2) and (3) for lack of personal jurisdiction and improper venue.

The magistrate judge issued a recommendation that the suit be dismissed because "[s]imply placing [a] product in the stream of commerce is not sufficient to create personal jurisdiction even if it were foreseeable that the product might end up in Louisiana." Because the magistrate judge found the jurisdictional issue dispositive, he did not reach the venue issue. The district court adopted the recommendation.

III.

We review *de novo* a district court's determination that it lacks personal jurisdiction over a non-resident defendant. *Adams v. Unione Mediterranea di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).

---

[1] Apparently the manufacturer, Royal King, claims proprietary rights to the molds from which the allegedly infringing bottle cap is produced.

The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

The Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a non-resident defendant unless the defendant has meaningful "contacts, ties, or relations" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 415 (1984), the court may exercise "general" jurisdiction over any action brought against that defendant. *Id.* at 414 n.9.[2] Where contacts are less pervasive, the court may still exercise "specific" jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n.8. This case presents only the question of specific jurisdiction.

A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has "minimum contacts" with the forum state such that imposing a judgment would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374 (5th Cir. 2002), we consolidated the personal jurisdiction inquiry into a convenient three-step analysis: "(1) whether the defendant . . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* at 378 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The forum state may create, and this court would be bound to apply, additional jurisdictional restrictions by statute, *Adams*, 220 F.3d at 667, but Louisiana's "long-arm" statute extends jurisdiction to the constitutional limit, LA. R.S. 13:3201(B), so the two inquiries in this case fold into one.

A.

To determine whether Insta-Mix has "minimum contacts" with Louisiana, we must identify some act whereby it "purposely avail[ed] itself of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws."[3] The defendant's conduct must show that it "reasonably anticipates being haled into court" in Louisiana. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Likewise, a defendant may permissibly alter its behavior in certain ways to avoid being subject to suit. *Id.*

The district court erred in holding that placing a product into the stream of commerce, at least where the defendant knows the product will ultimately reach the forum state, does not rise to the level of "purposeful availment." This court has consistently held that "mere

---

[2] Federal courts may also always assume jurisdiction over a defendant in any action in which there is personal, in-state service of process. *Burnham v. Superior Court*, 495 U.S. 604 (1990).

[3] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). A single purposeful contact may confer jurisdiction. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957).

foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce."[4] We adopted this position in an effort faithfully to interpret *World Wide Volkswagen*, 444 U.S. at 298, which holds that a state does not offend due process by exercising jurisdiction over an entity that "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state.[5] We have, therefore, declined to follow the suggestion of the plurality in *Asahi*, 480 U.S. at 112, that some additional action on the part of the defendant, beyond foreseeability, is necessary to "convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."[6]

---

[4] *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111 (1987)); *Bean Dredging Corp. v. Dredge Tech. Corp.*, 744 F.2d 1081 (5th Cir.1984).

[5] *See Oswalt v. Scripto, Inc.*, 616 F.2d 191, 199-200 (5th Cir. 1980) (finding jurisdiction where defendant had "attempted in [no] way to limit the states in which the [products] could be sold" but instead "had every reason to believe its product would be sold to a nation-wide market, that is, in any or all states").

[6] The *Asahi* plurality listed the following as possible additional actions that would evidence an intent to serve the market of the forum state: "designing the product for the market in the forum State, advertising in the forum State, establishing

(continued...)

Applying this circuit's more relaxed "mere foreseeability" test to the facts of this case, we conclude that Insta-Mix's contacts with Louisiana are sufficient to withstand constitutional scrutiny.

Insta-Mix maintains that Wal-Mart had complete control over the ultimate destination of its goods once they left the warehouse in Colorado Springs and that Wal-Mart could even make a mid-stream decision to re-route the goods to other distribution centers not listed on the invoices. A "unilateral decision to take a chattel . . . to a distant State" does not suffice to confer jurisdiction. *World Wide Volkswagen*, 444 U.S. at 314.[7] This case, though, does not present facts to the effect that a buyer transported goods intended for Louisiana to a distribution center in a far-away state. Rather, in 2002 and 2003 Insta-Mix filled approximately sixty-five purchase orders for items bound for Louisiana and sent invoices to Wal-Mart confirming the same.

Insta-Mix claims that its employees had no actual knowledge of the intended destination of its goods until it consulted the EDI system in preparation for this litigation. This claim is implausible and could not defeat jurisdiction even if true. It is eminently foreseeable that Insta-Mix's products would reach the market indicated on the company's invoices. In fact,

---

(...continued)

channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

[7] *See also Burger King*, 471 U.S. at 475 (reasoning that defendant may not be haled into court on account of "random, fortuitous, or attenuated" contacts) (internal quotations omitted).

Insta-Mix derived substantial revenue (about 4.5% of its total distribution) from its sale of thousands of units bound for Opelousas.[8] Although businesses should be able to take advantage of the increased efficiencies made possible by the electronic processing of purchase orders, they cannot then claim ignorance of the contents of those orders once their products inevitably reach the intended market.[9]

Finally, Insta-Mix argues that it has structured its primary conduct to avoid jurisdiction by including in the vendor agreement a condition that transfers ownership from Insta-Mix to Wal-Mart at the time that Wal-Mart receives its shipments in Colorado Springs.

Jurisdiction, however, "does not depend on the technicalities of when title passes;" rather, jurisdiction may attach both to manufacturers who supply their own delivery systems and to those that make use of the distribution systems of third parties. *Oswalt*, 616 F.2d at 197 n.8.[10]

In the interest of promoting that "degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World Wide Volkswagen*, 444 U.S. at 297, we conclude that a F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper.[11] This reasoning is

---

[8] *See Bean Dredging*, 744 F.2d at 1085 (deciding that introducing merely thousands, not millions, of items into the stream of commerce "is not enough to convince us that [defendant] had no interest in reaching as broad a market as it possibly could . . . . [T]he defendant here evidenced no attempt to limit the states in which its [products] would be sold and used."); *cf. World Wide Volkswagen*, 444 U.S. at 299 (holding that the "marginal revenues" derived from the fact that a product is merely "capable of use" in a distant state is "too attenuated a contact" to support jurisdiction).

[9] *See Asahi*, 480 U.S. at 121 (Brennan, J., concurring) (finding for a four-Justice plurality that although defendant "did not design or control the system of distribution that carried its [products] into [the forum state, defendant] was aware of the distribution system's operation, and it knew it would benefit economically from the sale in [the forum state] of products incorporating its components.") (internal quotations omitted). We further agree with Luv n' care that a contrary holding would permit foreign defendants to avoid jurisdiction in the United States by structuring their data systems to shield employees from the knowledge that their products ultimately will reach the United States.

[10] We have suggested, however, that the existence of a Free On Board ("F.O.B.") term in a contract is one factor to consider in determining whether the defendant has "minimum contacts" with the forum state. *See Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1136 (5th Cir. 1987) (finding that the "contact was weakened even further by the fact that the sale was initiated by the buyer and was shipped F.O.B. California, the seller's place of business."); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188-89 (5th Cir. 1978) (concluding that F.O.B. shipment, without more, does not constitute purposeful availment of the laws of the forum state).

[11] For example, in *Charia*, 583 F.3d at 189, the court found that "four sporadic and isolated sales" did not establish a sufficient basis for assertion of jurisdiction but noted that a case in which defendant "had supplied its product to the forum state in large quantities over a lengthy period of time" might be treated differently. Likewise, in *Singletary* the defendant had sold only one $33 part to a resident of the forum state. *See Singletary*, 828

(continued...)

supported by authority that states that the primary purpose of a F.O.B. term is to allocate the risk of damage to goods between buyer and seller.[12] Accordingly, Insta-Mix purposely availed itself of the benefit of the Louisiana market for its bottle, thereby establishing "minimum contacts" with the forum state.[13]

---

(...continued)
F.2d at 1136.

In those cases, the court found that the F.O.B. condition in the contract reinforced the holding that jurisdiction in the forum state was unforeseeable. Here, however, jurisdiction is foreseeable because of the regularity and quantity of shipments and the presence of a destination address on defendant's invoices. Where jurisdiction is otherwise foreseeable, a F.O.B. term cannot deprive the court of jurisdiction over the defendant.

[12] *Nuovo Pignone*, 310 F.3d at 380 n.5 ( stating that "incoterms are used . . . to allocate risk between buyers and sellers"); *see also* William V. Roth, Jr. & William V. Roth III, *Incoterms: Facilitating Trade in the Asian Pacific*, 18 U. PA. J. INT'L ECON. L. 731, 734 (1997) (describing the division of risk between buyer and seller in a standard incoterm and noting that "[m]ost importantly, the risk of damage to the goods shifts from seller to buyer exactly at the point where the goods" are surrendered to the carrier) (internal citations omitted).

[13] We disagree with Insta-Mix that this conclusion means that it must choose between doing business with Wal-Mart or being subject to suit in all fifty states. It is possible that Insta-Mix will avoid suit in a jurisdiction that requires some additional act beyond "mere foreseeability" for personal jurisdiction to attach. *See, e.g.*, *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 683 (1st Cir. 1992). Moreover, we do not speak to a situation in which, for example, jurisdiction is asserted in a state to which the allegedly offending Insta-Mix
(continued...)

## B.

It is not enough to satisfy due process that Insta-Mix has some "minimum contacts" with Louisiana. Rather, the underlying cause of action must "arise out of" the defendant's contacts with the forum state.[14] Luv n' care alleges that the presence of Insta-Mix's products in Louisiana infringed on Luv n' care's copyright.

"[T]his court has been reluctant to extend the stream-of-commerce principle outside the context of products liability cases," including cases involving "contract or copyright." *Nuovo Pignone*, 310 F.3d at 381. This is because contracting parties have more flexibility to tailor their relationship in view of jurisdictional considerations than do the manufacturer and consumer in a typical products liability case. *Id.* Nevertheless, we have found jurisdiction

---

(...continued)
product has not been regularly shipped in substantial quantities directly from Insta-Mix facilities.

Insta-Mix could also attach conditions to its vendor agreement that forbid Wal-Mart from shipping to those states that operate under a "mere foreseeability" regime, or to all distribution centers outside the Great Plains, or to any forum in which mounting a defense would be inconvenient. The fact that it has not done so supports our conclusion that Insta-Mix intends to avail itself of as wide a market for its goods as possible. *See Bean Dredging*, 744 F.2d at 1085. Until presented with such a case, we reserve judgment on the ultimate effectiveness of any contractual condition designed to avoid jurisdiction.

[14] *See Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (opining that "the relationship among the defendant, the forum, and the litigation . . . [is] the central concern of the inquiry into personal jurisdiction"); *Nuovo Pignone*, 310 F.3d at 378.

6

where "the same public policy concerns that justify use of the stream-of-commerce principle in the products liability context are present." *Id.*

In *Nuovo Pignone*, the defendant Fagioli, an Italian shipper, allegedly damaged plaintiff's cargo with a defective onboard shipping crane while docking and unloading at a Louisiana port. We found jurisdiction even though Fagioli, like Insta-Mix, employed third-party intermediaries at the point of injury, i.e., the unloading dock. We further opined that Fagioli should have considered the possible damage that a defective crane aboard its vessel would cause in the forum state. Similarly, Insta-Mix should have known, when it availed itself of the Louisiana market for infant care products, that it could face potential liability from competitors with similarly-designed items.[15]

The closest analogue to the present case is *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir. 1993), in which we denied jurisdiction because there was a "highly attenuated" relationship between defendant's contact with the forum state and plaintiff's declaratory judgment action for copyright infringement. *Ham*, 4 F.3d at 416. In *Ham*, however, the allegedly infringing song was different from the one that had been distributed through the stream of commerce to the forum state. The court suggested the result might be different if the song distributed in Texas and the allegedly infringing song were one and the same. *Id.* at 416 n.13.

Luv n' care claims infringement from the same bottle that traveled through the stream of commerce from Colorado to Louisiana. This connection between the allegedly infringing product and the forum state is sufficient to confer personal jurisdiction.[16]

## C.

It remains for us to inquire whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. When a plaintiff makes its *prima facie* case that the defendant has "minimum contacts" with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Nuovo Pignone*, 310 F.3d at 382. In conducting the fairness inquiry, we examine (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 324 (5th Cir. 1996).

Insta-Mix relies primarily on the third and fourth elements, arguing that Luv n' care has not named Wal-Mart, the retailer, nor Royal

---

[15] *See also Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073-74 (5th Cir. 1990) (finding jurisdiction in a breach of warranty action).

[16] This reasoning applies with equal force to Luv n' care's claims of trademark dilution and unfair competition under the Lanham Act, which in fact instructs the court, when deciding whether to issue an injunction to protect the trademark owner, to consider, *inter alia*, "the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought." 15 U.S.C. § 1125(c)(1)(F). We reserve judgment on whether jurisdiction would lie for other causes of action outside the arena of products liability.

King, the alleged manufacturer of the bottle top, as the more natural defendants. Nor can the district court grant full injunctive relief where Wal-Mart remains free to sell, and Royal King remains free to produce, the infringing cap. Therefore, Insta-Mix portrays this action as an effort by Luv n' care, a major manufacturer, to intimidate a small competitor into exiting the market.

If Luv n' care's suit is indeed frivolous, the district court presumably will deal with that deficiency. But, where a product allegedly causes economic injury in Louisiana, it is in the interest of that state to have its courts mediate the dispute. Furthermore, it is not unreasonable to ask Insta-Mix to defend in Louisiana, where the company avails itself of the benefit of that state's market for thousands of iterations of its product. The forum state (Louisiana) and the plaintiff (Luv n' care, which is organized under Louisiana law and based there) obviously have some legitimate interest in litigating this matter in Louisiana, where there has been regular distribution of a number of the allegedly offending products.[17] Therefore, traditional notions of fair play and substantial justice do not require that this suit be dismissed for want of personal jurisdiction.[18]

_____

[17] *See Bean Dredging*, 744 F.2d at 1085 (reasoning that "[b]ecause the product was used in Louisiana, because the defects surfaced in Louisiana, because the economic injury has befallen a resident of Louisiana . . . that state has an interest in providing a forum for this suit").

[18] We also note that although Wal-Mart may be a more natural defendant in this action, the vendor agreement between Wal-Mart and Insta-Mix states that Insta-Mix shall defend and indemnify Wal-Mart against, *inter alia*, any actual or alleged (continued...)

The judgment of dismissal is REVERSED, and this matter is REMANDED for further proceedings.[19]

_____

(...continued)
copyright infringement.

[19] Because the district court did not rule on Insta-Mix's alternative argument on improper venue, we do not reach that issue, and the parties are free to raise it on remand.

DeMOSS, Circuit Judge, specially concurring:

I concur in the majority opinion because I recognize that Fifth Circuit precedent binds us to follow the "stream of commerce" approach in personal jurisdiction cases;[20] however, I write separately for two reasons: (1) to note that if it were not for that precedent, I would certainly vote to decide this case under the "stream-of-commerce-plus" approach announced by Justice O'Connor in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), and (2) to highlight how this case contributes to the circuit split created by *Asahi*, a split I urge the Supreme Court to resolve.

In my opinion, Justice O'Connor's stream-of-commerce-plus theory is the more constitutionally defensible of the two theories of minimum contacts to emerge from *Asahi*. The principle of "minimum contacts" is a court-created principle that effectively limits a state's exercise of jurisdiction over nonresident defendants. Jurists have long recognized "that the laws of one State have no operation outside of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions." *Pennoyer v. Neff*, 95 U.S. 714, 722 (1878). Thus, the "minimum contacts" test was developed over time to define the necessary contact a nonresident defendant must have with a state before the defendant can be subjected to suit there. *Asahi* is the last in a long line of Supreme Court cases to define the contours of that test, and it left the test in a state of complete disarray. Only three Justices joined the portion of Justice O'Connor's plurality opinion that embraced the stream-of-commerce-plus approach to minimum contacts; of the five remaining Justices, three Justices joined Justice Brennan in a concurrence that embraced the stream of commerce approach and Justice Stevens wrote his own concurrence embracing neither. It is the stream of commerce approach that the Fifth Circuit follows and that I criticize here (although I recognize its binding effect). The stream of commerce, or "mere foreseeability," approach requires only that a nonresident defendant place its product in the stream of commerce with the expectation that the product will reach the forum state. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 380 & n.7 (5th Cir. 2002). As Judge Niemeyer of the Fourth Circuit eloquently stated in *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994), "To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism." Justice O'Connor's stream-of-commerce-plus approach states that mere foreseeability is not enough and requires "[a]dditional conduct of the defendant . . .

---

[20] *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993). Writing for the unanimous panel in *Ruston*, I described the Fifth Circuit's long-time support of the "stream of commerce" theory and rejection of the "stream-of-commerce-plus" theory. *Id.* In that case, application of the "stream of commerce" theory to the facts at hand led to a reasonable result, in part because *Ruston* involved more than mere placement of a product into the stream of commerce. *See id.* at 417-18 (third-party defendant shipped products directly to forum, sent employees to forum to consult with customers). The exercise of personal jurisdiction over Insta-Mix in this case, however, stretches the stream of commerce theory to its outer limits, and thereby reveals the flaws in the stream of commerce approach.

indicat[ing] an intent or purpose to serve the market in the forum State," and thereby better comports with our country's principles of federalism. *See Asahi*, 480 U.S. at 112.

This case is the proverbial straw that breaks the camel's back because it stretches the stream of commerce theory beyond its past limits and thus deepens the divide between circuits that require "additional conduct" and those that do not. Subjecting Insta-Mix to suit in Louisiana creates a "Wal-Mart exception," rendering any small company that sells a product to Wal-Mart subject to suit in any state in the nation in which Wal-Mart resells the company's products. Insta-Mix did no business in Louisiana; it had no agent for service of process in Louisiana; it negotiated a contract with Wal-Mart in Arkansas and it sold and delivered its products to Wal-Mart for its plant in Colorado; and Wal-Mart picked up Insta-Mix's products in Colorado on a Wal-Mart truck (or a truck contracted for by Wal-Mart). None of the plus factors defined by Justice O'Connor in *Asahi* are satisfied on the record here: Insta-Mix's product was not designed or designated for the Louisiana market; Insta-Mix did not advertise in Louisiana; Insta-Mix established no channels for providing regular advice to customers in Louisiana; and Insta-Mix did not market its product through a distributor who agreed to serve as a sales agent in Louisiana. *Asahi*, 480 U.S. at 112. In a stream-of-commerce-plus circuit, personal jurisdiction would not attach in this case. But under the mere foreseeability test that controls our circuit, Insta-Mix is subject to suit in Louisiana. This result on this record defies principles of federalism and therefore presses for the repudiation of the "stream of commerce" approach to personal jurisdiction.

For the above reasons, I hope Insta-Mix will apply for a writ of certiorari and I urge the Supreme Court to take up the minimum contacts issue and resolve it and the increasing circuit divide with clarity. The recent changes in the composition of the Court should produce a new effort by the Court to definitively answer this controversy. The sovereignty of the individual states is on the line.