# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 30, 2022

Lyle W. Cayce
Clerk

No. 19-51019

Getagadget, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Jet Creations Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:19-CV-330

Before Dennis, Southwick, and Ho, *Circuit Judges*.

Per Curiam:*

This appeal concerns whether a Texas federal district court can exercise personal jurisdiction over a nonresident defendant when (1) the defendant's allegedly infringing product was sold on its website and the websites of national retailers and (2) the plaintiff alleges only two sales of the product into Texas, both of which were purchases made by the plaintiff's

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

counsel. The district court determined that such a defendant lacks minimum contacts with the forum state. We conclude that, regardless of whether the defendant's purported contacts with Texas would be sufficient for courts in the state to try claims related to those contacts, the specific claims that the plaintiff brought in this case do not arise from them. Accordingly, we AFFIRM.

## I.

Getagadget, LLC (Getagadget) is a limited liability company organized under the laws of Texas, and it holds a registered trademark to the name "BIG BITE." Under this trademark, Getagadget sells a beach toy called the "Big Bite Shark Beach Bucket," which is a sand bucket shaped like a shark's head. Jet Creations, Inc. (Jet) is a Virginia corporation with its principal place of business in Virginia. It sells a product called the "Big Bite T-Rex! Prehistoric Float," which is a pool float shaped like a tyrannosaurus rex's head.

Jet markets and sells the pool float product to customers nationwide directly through its website. The product is also available through online intermediaries, including the websites of Amazon, Walmart, and SwimOutlet. Jet itself fulfills at least some of the orders that are placed through the online intermediaries.

In March 2019, Getagadget's counsel purchased the Big Bite T-Rex! Prehistoric Float on Amazon, and Jet fulfilled the order by shipping the product to counsel's Texas address. That same month, Getagadget's counsel also ordered the Big Bite T-Rex! Prehistoric Float through Walmart's website and had it delivered to a physical Walmart store located in Texas, where counsel then picked it up. The two sales totaled $60.46. These sales to Getagadget's counsel, along with Jet's nationally accessible website and the availability of its product on the websites of national retailers,

constitute the entirety of Jet's contacts with Texas that Getagadget alleged in this case.

In May 2019, Getagadget sued Jet in federal district court in Texas, alleging that the Big Bite T-Rex! Prehistoric Float infringed on its trademark. Getagadget asserted claims for trademark infringement, unfair competition and false designation of origin, and trade dress infringement under both federal and Texas law.

Jet entered a special appearance and filed a motion to dismiss the case for, *inter alia*, a lack of personal jurisdiction, arguing that it lacked any significant contacts with Texas. In its response to Jet's motion, Getagadget included a single sentence requesting that the court permit jurisdictional discovery. Specifically, Getagadget asked for "limited discovery with Defendant and the other nationwide retailers listed [in its response] that have retail stores in Texas for sales in Texas and in this Judicial District in addition to limited discovery with regard to Defendant and any other related entities with which Defendant may ship or sell infringing products."

Ruling only on the issue of personal jurisdiction, the district court granted Jet's motion and dismissed the case. The court reasoned that the purchases by plaintiff's counsel were "unilateral acts" and that, without more, they were insufficient to make a *prima facie* showing of the minimum contacts needed for personal jurisdiction. The court did not address Getagadget's request for jurisdictional discovery, but it appears to have implicitly denied it by dismissing the case. *See Snider v. L-3 Comm'ns Vertex Aerospace, L.L.C.*, 946 F.3d 660, 667 (5th Cir. 2019) ("When a district court enters a final judgment, it has implicitly denied any outstanding motions, even if the court does not explicitly deny a particular motion."). Getagadget timely appealed.

No. 19-51019

## II.

This court reviews *de novo* a district court's determination regarding personal jurisdiction. *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). "Where, as here, the district court dismissed [the case] without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. We accept the plaintiff's uncontroverted, nonconclusional factual allegations as true and resolve all controverted allegations in the plaintiff's favor." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (internal quotation marks and citation omitted).

A district court's denial of a plaintiff's request for jurisdictional discovery is reviewed for abuse of discretion. *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).

## III.

On appeal, Getagadget raises two points of error.[1] First, it contends that it established a *prima facie* case for personal jurisdiction and that the district court erred by concluding otherwise. Second, Getagadget argues that, even if it failed to establish a *prima facie* case, the district court abused

---

[1] Preliminarily, we note that the district court did not enter a separate Federal Rules of Civil Procedure Rule 58 final judgment in this case. This is not fatal to our appellate jurisdiction, however, when "an order of dismissal . . . was 'the final decision in the case' and the appellee 'did not object to the taking of the appeal in the absence of a judgment.'" *Whitaker v. City of Houston*, 963 F.2d 831, 833 (5th Cir. 1992) (quoting *Banker's Trust Co. v. Mallis*, 435 U.S. 381, 387-88 (1978)). Both of these conditions are satisfied here. Additionally, no outstanding motions exist in the record that have been left unresolved by the absence of a separate final judgment, and Getagadget's notice of appeal would have been timely had the district court's dismissal order been a Rule 58 judgment, which are both factors counseling in favor of our exercising our discretion to assume appellate jurisdiction over the case. *See id.* at 834 (citing *Townsend v. Lucas*, 745 F.2d 933 (5th Cir. 1984) (per curiam)). We accordingly elect to resolve this case on the merits.

4

its discretion by dismissing the case without allowing jurisdictional discovery. We address these issues in turn.

## A.

Personal jurisdiction, or jurisdiction *in personam*, is the authority of a court to issue decrees that bind a specific defendant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court's personal jurisdiction over a defendant is established if the defendant is properly served, "the forum state's long-arm statute extends to the nonresident defendant[,] and the exercise of jurisdiction comports with due process." *Carmona*, 924 F.3d at 193. "Because Texas's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, the [latter] two inquiries merge." *Id.*

Courts have long held that basic concepts of fairness require "that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (cleaned up). Thus, "[t]he Due Process Clause of the Fourteenth Amendment guarantees that no federal court may assume jurisdiction *in personam* of a nonresident defendant unless the defendant has meaningful 'contacts, ties, or relations' with the forum state." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). By limiting courts in this way, "the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Burger King*, 471 U.S. at 472 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The concept of personal jurisdiction is divided into general and specific jurisdiction. General personal jurisdiction—which allows a court to

No. 19-51019

try all actions against a defendant, regardless of subject matter—requires that a defendant be so continuously and systematically connected with the forum state as to be "essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Getagadget does not contend that the Texas federal district court possessed general jurisdiction over Jet.

Instead, Getagadget argues that the district court had specific personal jurisdiction over Jet that should have allowed it to try specifically the product infringement claims at issue in this case. "A federal court may satisfy the constitutional requirements for specific jurisdiction by a showing that the defendant has 'minimum contacts' with the forum state such that imposing a judgment" based on the particular claims that the plaintiff asserts "would not 'offend traditional notions of fair play and substantial justice.'" *Luv N' care*, 438 F.3d at 469 (quoting *Int'l Shoe*, 326 U.S. at 316). This court has "consolidated the [specific] personal jurisdiction inquiry into a convenient three-step analysis." *Id.* When evaluating whether specific jurisdiction exists, we consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002), *abrogated on other grounds by Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507-08 (2017), (citing *Burger King*, 471 U.S. at 474).

The district court determined that the two sales to Getagadget's counsel were "unilateral act[s]" on the part of the plaintiff that were designed to "manufacture" personal jurisdiction, and it held that the sales

6

thus did not amount to minimum contacts with Texas under the first prong of the analysis. The Supreme Court has repeatedly held that the "unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). For example, in *World-Wide Volkswagen Corp. v. Woodson,* the plaintiffs had purchased an automobile from a dealership in New York and eventually ended up sustaining injuries during a car accident in Oklahoma. *See* 444 U.S. at 288. Plaintiffs attempted to sue the dealership in Oklahoma, but the Supreme Court held that even if it was "foreseeable" that purchasers of the defendants' cars would take the cars to Oklahoma, this did not qualify as a minimum contact between the dealership and the state. *Id.* at 298. As the Court put it, "the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* (internal quotation marks and citation omitted). Based on this reasoning, a number of district courts have concluded that purchases made by plaintiffs for the purpose of "manufacturing" jurisdictional contacts are unilateral actions that cannot be credited. *See, e.g.*, *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) (collecting cases). "The logic of these cases is that a plaintiff cannot rely solely on its own manipulative acts to create jurisdiction, and that in such circumstances the defendant cannot be said to have purposefully availed itself of the privilege of conducting activities in the state selected by plaintiff." *Id.* at 624.

On the other hand, a sale made or fulfilled by the defendant directly to a plaintiff that the defendant knows is located in the forum-state is not unilateral activity in the strictest sense of the term, as it necessarily requires the defendants' willing participation in the transaction. In other contexts, the Supreme Court has held that similar acts on the part of the defendant

constituted enough activity directed at a forum state to confer specific personal jurisdiction. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 (1957), for instance, the Supreme Court held that an out-of-state insurance company that mailed a solicitation to a customer in California and then accepted payment mailed from the customer's California address for the lifetime of the policy had created a "substantial connection" with California sufficient to subject it to the state's jurisdiction. Indeed, at least two federal appeals courts have considered sales made to a plaintiff or its agent in evaluating whether minimum contacts exist, with one expressly holding that such purchases are not unilateral actions and can be included in the evaluation. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010); *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010).

Ultimately, we need not decide whether the two sales to Texas would be sufficient to permit the Texas federal district court to exercise personal jurisdiction over Jet had Getagadget brought, for example, product liability claims based on injuries it suffered as a result of Jet's fulfilling the orders with defective products. We instead resolve this case at the second prong of the specific jurisdiction analysis. Getagadget has not shown that its trademark infringement and unfair competition claims "ar[o]se[] out of" the two sales that were made to its attorney, regardless of whether those sales would amount to sufficient minimum contacts with Texas to raise other types of claims related to the transactions.[2] *Luv N' care* (quoting *Nuovo Pignon*, 310 F.3d at 378).

---

[2] Getagadget also argues specific jurisdiction exists because the allegedly infringing product was available for order on several websites that were accessible to anyone with an internet connection, including internet users in Texas. But courts have universally held that "the mere maintenance of a website that can be reached by residents of the forum state

The basic theory underpinning specific jurisdiction is that it is fair for a state's courts to hold a defendant accountable for conduct that the defendant directs toward the state that then causes injury to the state or its residents. *Burger King*, 471 U.S. at 472-73. Thus, although it is necessary for a plaintiff to demonstrate that a defendant possesses minimum contacts with a forum state to establish personal jurisdiction over that defendant, that alone is not sufficient to try all claims against the defendant. *See Luv N' care*, 438 F.3d at 469. Minimum contacts only permit a court to exercise specific jurisdiction over claims that *arise from* those contacts. *See id.* When evaluating whether the claims that Getagadget asserts arose from the sales that Jet made to Getagadget's counsel, it's important to recall that "[t]he gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985). In this light, Getagadget's use of sales to its own counsel as a basis for personal jurisdiction is "particularly problematic," *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 596 (E.D. La. 2015), because Getagadget cannot reasonably argue that any consumer confusion arose out of Jet's selling and shipping the infringing product *to Getagadget's counsel*.

Indeed, many "courts considering similar claims have rejected attempts by plaintiffs to manufacture contacts with the forum state by having

---

will not be sufficient to satisfy the purposeful availment prong of the specific personal jurisdiction test." 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1073 (4th ed); s*ee also Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) ("[T]he ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District." (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1349 (D.C. Cir. 2000))). Because the bare existence of these websites does not demonstrate any conduct targeting Texas or its residents on the part of Jet, we do not consider them in the analysis.

an agent purchase the alleged infringing products." *U.S. Olympic Comm. v. Does 1-10*, No. C 08-03514 JSW, 2008 WL 2948280, at *2 (N.D. Cal. July 25, 2008) (citing *Millennium Enterprises, Inc. v. Millennium Music, LP,* 33 F.Supp.2d 907, 911 (D. Or. 1999); *Mattel, Inc. v. Anderson,* 2005 WL 1690528, *2 (S.D.N.Y. July 18, 2005); and *ISI Brands, Inc. v. KCC Int'l, Inc.,* 458 F.Supp.2d 81 (E.D.N.Y. 2006)); *see also 721 Bourbon*, 140 F. Supp. 3d at 596-97. We likewise now hold that, in order to demonstrate that its trademark infringement and unfair competition claims arose out of sales that Jet directed at Texas, Getagadget was required to show that those sales were to customers who could have been potentially deceived by the alleged infringement. Getagadget's counsel's transactions will not suffice because counsel "knew exactly with whom []he was dealing and knew that defendants were not associated in any way with plaintiff." *Millennium Enterprises*, 33 F.Supp.2d at 911. "Clearly, [Getagadget and its counsel were] not confused as to the source of the products in question." *721 Bourbon, Inc.*, 140 F. Supp. 3d at 596.

Thus, irrespective of whether the sales alleged here would amount to sufficient minimum contacts between Jet and Texas to allow the state's courts to try claims against Jet that actually arose from those transactions, they cannot be the basis for Texas courts' exercising specific personal jurisdiction with regard to the claims that Getagadget brought here. The specific claims at issue are largely unrelated to those particular transactions, and the district court was therefore correct that Getagadget failed to make a *prima facie* case for personal jurisdiction.

## B.

In the alternative, Getagadget argues that the district court abused its discretion by denying it jurisdictional discovery. Getagadget specifically points to its assertions regarding (1) Jet's products being available on several

nationally accessible websites and (2) the two sales of the purportedly infringing product into the forum state.  Based on these two considerations, Getagadget contends that it made the preliminary showing of jurisdiction sufficient to entitle it to discovery to determine whether Jet had additional contacts with the forum.

"As the party opposing dismissal and requesting discovery, [Getagadget] bear[s] the burden of demonstrating the necessity of discovery."  *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013).  "[T]his Court affirms denials of discovery on questions of personal jurisdiction in cases where discovery sought could not have added any significant facts."  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000) (internal quotation marks and citation omitted).  But "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal quotation marks and citation omitted); *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (same).  "A district court's discovery decision will be reversed only if it is arbitrary or clearly unreasonable and the appellant demonstrates prejudice resulting from the decision."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 428 (5th Cir. 2005) (internal quotation marks and citation omitted).

Preliminarily, it is unclear whether this issue was sufficiently raised before the district court, where Getagadget only mentioned it in a single sentence in its response to Jet's motion to dismiss.  In similar circumstances, however, the Third and Ninth Circuits have directed district courts to authorize jurisdictional discovery.  *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 335 n.9 (3d Cir. 2009) (instructing the district court to permit jurisdictional discovery on remand even though plaintiffs' "never formally

moved for jurisdictional discovery" and instead "mention[ed] the possibility of conducting such discovery in their opposition to the motion to dismiss"); *K-Swiss Inc. v. GTFM, Inc.*, 278 F. App'x 772, 773 (9th Cir. 2008) (same); *cf. Penaloza v. Drummond Co., Inc.*, 662 F. App'x 674, 676, 678-79 (11th Cir. 2016) (affirming the denial of jurisdictional discovery when request raised in response to show-cause order). Further, in several unpublished decisions, district courts in this circuit have ruled on jurisdictional discovery requests first raised in response to a motion to dismiss. *See, e.g.*, *ETS-Lindgren, Inc. v. MVG, Inc.*, No. A-15-CA-00456, 2015 WL 6756186, at *2, 5 (W.D. Tex. Nov. 4, 2015) (considering, but ultimately denying, jurisdictional discovery request when the request was raised in response to a motion to dismiss); *Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, No. A-12-CV-644, 2013 WL 12121034, at *1 (W.D. Tex. June 12, 2013) (granting limited jurisdictional discovery to request made in response to a motion to dismiss). Jet does not argue that the issue was not properly brought to the district court's attention, and thus we assume *arguendo* that it is properly before us.

So long as there is not an indication that a district court inadvertently overlooked some crucial aspect of a pending discovery request, it is not a *per se* abuse of discretion for a district court to implicitly deny the request by disposing of the case without addressing it. *See Snider*, 946 F.3d at 667; *see also Mendez v. Poitevent*, 823 F.3d 326, 336-37 (5th Cir. 2016) (no abuse of discretion where district court implicitly denied Rule 56(d) motion for discovery by granting summary judgment); *cf. Galaxy Tire, Inc. v. Terwilliger*, 189 F.3d 469 (5th Cir. 1999) (unpublished) (finding an abuse of discretion where the district court stated that the plaintiffs "offered no explanation as to what additional discovery it needed" despite plaintiffs having submitted an affidavit detailing this information). Instead, we consider whether the requesting party has made specific allegations that the evidence it seeks is likely to support a finding of jurisdiction. *Monkton Ins. Servs.*, 768 F.3d at

434; *see also Whitener v. Pliva, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) ("[B]ecause the [plaintiffs] identify no evidence that they are likely to discover that would call our lack of personal jurisdiction into question, the district court did not abuse its discretion in denying the[ir] motion for additional jurisdictional discovery."). It is not an abuse of discretion for a district court to deny jurisdictional discovery when the plaintiff "does not identify . . . how [the discovery] would show that [the defendant] has sufficient minimum contacts with" the forum state. *Embry*, 803 F. App'x at 749.

In its briefing to this court, Getagadget avers that its request for jurisdictional discovery "identified the discovery needed, the facts expected to be obtained, and how that information would support" the exercise of jurisdiction. However, its request to the district court was not as specific or detailed as it now claims. What Getagadget actually requested was discovery related to Jet and "other nationwide retailers listed" in its filings that have retail stores in Texas "for sales in Texas" and "limited discovery with regards to Defendant and any other related entities with which Defendant may ship or sell infringing products."

Conspicuously absent from this broad request and from every other filing Getagadget has made in this case is any allegation that Jet or its intermediaries have actually stocked, advertised, or sold the purportedly infringing product in Texas other than with respect to the individual sales to Getagadget's counsel. Beyond its own efforts to generate jurisdiction, Getagadget has not alleged that any clear link exists between Texas and the purported infringement that is the subject of this action. The Due Process Clause requires that a defendant or the defendant's challenged conduct have some "substantial connection" to the forum in which an action is brought, *McGee*, 355 U.S. at 223, and merely being a convenient or advantageous forum for the plaintiff will not suffice. With no obvious substantial

No. 19-51019

connection alleged in this case, the district court was not required to authorize a fishing expedition for Getagadget to discover in the first instance whether or not it had actually been injured in Texas, the forum in which it would most prefer to pursue this suit. *See Toys 'R' Us*, 318 F.3d at 456 (requiring that a defendant make "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" in order to obtain jurisdictional discovery). Accordingly, the district court did not abuse its discretion in implicitly denying Getagadget's request for jurisdictional discovery.

\* \* \*

Based on the foregoing, we AFFIRM the district court's determination that it lacked personal jurisdiction over Jet, its implicit denial of Getagadget's request for jurisdictional discovery, and its dismissal of the case.