# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

September 26, 2014

Lyle W. Cayce
Clerk

No. 13-50941

MONKTON INSURANCE SERVICES, LIMITED, Acting by its Joint Official Liquidators, Gordon I. MacRae and Gwyn Hopkins,

Plaintiff

v.

WILLIAM G. RITTER,

Defendant–Third Party Plaintiff–Appellant

v.

BUTTERFIELD BANK (CAYMAN) LIMITED,

Third Party Defendant–Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

William G. Ritter appeals the district court's order denying his motion for jurisdictional discovery and granting Butterfield Bank (Cayman) Limited's motion to dismiss for lack of personal jurisdiction. For the following reasons, we AFFIRM the judgment of the district court.

No. 13-50941

## I

Defendant-Third Party Plaintiff-Appellant, William G. Ritter, is a resident of Odessa, Texas, and owns Geneva Insurance SPC Ltd. (Geneva). Geneva is incorporated and does business in the Cayman Islands. Monkton Insurance Services, Ltd. (Monkton) is an insurance manager incorporated and doing business in the Cayman Islands and, at all relevant times, managed Geneva. David Keith Self was the sole director and manager of Monkton.

In March 2008, Self opened a Cayman bank account on behalf of Geneva with Third Party Defendant-Appellee, Butterfield Bank (Cayman) Limited (Butterfield), which is a Cayman bank organized and regulated under Cayman law and located on the island of Grand Cayman. Pursuant to this transaction, Self faxed several documents to Ritter, in Texas, for his signature ("the Contracts"). In the Contracts, Self and Ritter are both identified as "Director" of Geneva. The Contracts expressly provide that "[p]erformance [under the account] shall be at George Town, in the island of Grand Cayman, one of the said Cayman Islands." They further provide that "legal relations and place of jurisdiction between Bank and customer [Geneva] shall be governed by the laws of the Cayman Islands."

For the next three years, Geneva conducted business in the Cayman Islands, including withdrawing and depositing money in the Butterfield account. According to Ritter, Geneva sometimes received checks and wire transfers from its customers in Texas for deposit in the Butterfield account, and it sometimes transferred funds from its account at Butterfield to those same clients. These transactions occurred twenty times over a three and one-half year period. In each instance, it was Geneva—not Butterfield—that requested the transaction. Ritter also placed eight phone calls while in Texas, to Butterfield, to arrange wire transfers or take other actions related to Geneva's account. These calls were made over a total of four days during a

three and one-half year timeframe and totaled collectively about forty-five minutes.  They were all initiated by Ritter.

During his management of Geneva, Self allegedly withdrew $435,000 from Geneva's account with Butterfield without Ritter's consent.  When Ritter found out, he demanded that Self repay him personally.  Soon after, Monkton officials discovered that Self had transferred money from various client accounts to Ritter.  As a result, Monkton sued Ritter in Odessa, Texas.  Ritter then filed a third-party complaint against Butterfield alleging that Butterfield breached the Contracts with Geneva by failing to detect Self's forged signatures on withdrawals from Geneva's bank account.  Butterfield moved to dismiss Ritter's claims for lack of personal jurisdiction. Ritter then requested a continuance in order to conduct jurisdictional discovery. The district court denied Ritter's request for discovery and granted Butterfield's motion to dismiss for lack of personal jurisdiction.  This appeal followed.

## II

Ritter appeals the district court's dismissal of his claims against Butterfield for lack of personal jurisdiction.  He argues that Butterfield established sufficient minimum contacts with Texas for the district court to exercise both general and specific jurisdiction over it.  We review the district court's dismissal for lack of personal jurisdiction *de novo*.  *ITL Int'l Inc. v. Constenla S.A.*, 669 F.3d 493, 496 (5th Cir. 2012).  The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  "We must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation."  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (internal quotation marks and citation omitted) (alterations in original).  To establish that personal jurisdiction is proper, the plaintiff must show that the

nonresident defendant "purposefully availed [itself] of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Revell*, 317 F.3d at 470.

Ritter argues that Butterfield's contacts with Texas through its website,[1] telephone conversations with Ritter, and wire transfers to Texas banks are "continuous and systematic" enough to justify the exercise of general jurisdiction. We disagree.

The Supreme Court recently considered the requirements to establish general jurisdiction in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The Court observed that the proper consideration when determining general jurisdiction is whether the defendant's "'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). The Court held that for a corporation, "the place of incorporation and principal place of business" are where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 760. It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business. *See id.*; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411–12, 418 (1984).

---

[1] Ritter also argues that the district court committed reversible error when it acted as a fact finder and viewed Butterfield's website on its own initiative. On appeal, we review the evidence in the record under a *de novo* standard and do not rely on the district court's review of the website. The website at issue does not appear to be a proper subject for judicial notice, and in any event, the district court did not notify the parties that it intended to take judicial notice of the website. *See* Fed. R. Evid. 201(e).

No. 13-50941

Here, Butterfield is a Cayman bank incorporated in the Cayman Islands with its principal place of business in George Town, Grand Cayman. Butterfield is therefore "at home" in the Cayman Islands. *Daimler*, 134 S. Ct. at 760. Ritter's attempts to show otherwise are unavailing. First, the communications between Butterfield and Ritter and the wire transfers Butterfield made to Texas banks were initiated by Ritter and Geneva, and thus cannot be said to render Butterfield "at home" in Texas. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."). In addition, Ritter does not dispute that "performance" under the Contracts, including the wire transfers, occurred in Cayman.

Ritter points to Butterfield's interactive website as a "continuous and systematic" contact. However, Butterfield's website is insufficient to establish general jurisdiction in this case. We have used the *Zippo* sliding scale when a plaintiff argues that personal jurisdiction exists due to a defendant's website. *Revell*, 317 F.3d at 470 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). However, the sliding scale

> [I]s not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction—in other words, while it may be doing business with Texas, it is not doing business in Texas.

*Id.* at 471. In this case, at most, Butterfield's website shows that Butterfield conducts business with Texas, not in Texas. *Id.* Because Butterfield is neither incorporated nor has its principal place of business in Texas, and because Ritter has not pleaded facts showing that Butterfield's contacts with Texas are "continuous and systematic" enough to render it "at home" in Texas, general jurisdiction is improper. *See Daimler*, 134 S. Ct. at 761.

Likewise, this court does not have specific jurisdiction over Butterfield. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotation marks and citations omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* This circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation omitted). If Ritter can successfully establish the first two prongs, then the burden shifts to Butterfield to show that exercising jurisdiction would be unfair or unreasonable. *Id.*

We have previously explained that a defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state. *Id.* at 272. Nor can the plaintiff's own contacts with the forum be used to demonstrate contacts by the defendant. *See Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980) (determining that the actions of purchasers in driving automobiles sold by the defendant into the

forum does not create a relationship between the defendant and the forum); *Hanson*, 357 U.S. at 253.

Ritter points to the following contacts to support specific jurisdiction: (1) Butterfield entered into an account contract with Geneva, through its owner and director, Ritter; (2) Self sent the account contract to Ritter in Texas; (3) Butterfield made wire transfers between Geneva's account in the Cayman Islands and bank accounts in Texas; and (4) Butterfield communicated with Ritter over the telephone. However, these facts cannot support a finding that Butterfield has purposefully directed its activities towards Texas or purposefully availed itself of the privileges of conducting business in Texas.

Butterfield entered into an account contract with Geneva, a Cayman company, in Cayman, not with Ritter, a Texas resident. Even if Butterfield had contracted with Ritter, "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The remainder of Ritter's evidence is insufficient to create specific jurisdiction as well. First, Self, not Butterfield, sent the Contracts to Ritter, so Butterfield cannot be said to have sent anything to Texas. Second, the communications between Ritter and Butterfield and the wire transfers facilitated by Butterfield were initiated by Ritter or Geneva and are thus insufficient to confer jurisdiction. *See, e.g., Walden*, 134 S. Ct. at 1122 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012). Because Butterfield has not purposefully availed itself of the benefits and protections of Texas law through minimum contacts related to the cause of action, exercising specific jurisdiction over Butterfield would be improper. *See Walden*, 134 S. Ct. at 1122–23.

No. 13-50941

## III

Finally, Ritter challenges the district court's denial of his motion for jurisdictional discovery. We review a district court's order denying a plaintiff's request for jurisdictional discovery for abuse of discretion. *Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013). "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Id.* at 264. A plaintiff is not entitled to jurisdictional discovery when "the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009).

The district court denied Ritter's request to conduct jurisdictional discovery regarding: the nature, quality, and quantity of Butterfield's contacts with the forum state; relevant documents and data supporting such contacts; and Butterfield's communications relating to information, funds, or other data exchanged during the last five years between Butterfield and Texas. The district court determined that it was clear that Ritter had failed to make a prima facie showing of either specific or general jurisdiction. In addition, the district court did not believe that the request would add any "significant facts." *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000).

On appeal, Ritter contends that the evidence before the district court presented a material fact issue as to Butterfield's contacts with Texas. Ritter points to his communications with Butterfield, the twenty wire transfers Butterfield made to Texas residents, and Butterfield's website. However, as Butterfield notes, the facts are not disputed. Here, additional discovery would

8

No. 13-50941

only allow Ritter to access more information regarding Butterfield's other contacts with Texas.[2]

Even if Ritter found further evidence that Butterfield had communicated with other Texas residents, this would not be enough to show that Butterfield is "at home" in Texas. *Goodyear*, 131 S. Ct. at 2851. More evidence of wire transfers, phone calls, or other Butterfield customers with a tie to Texas will not establish jurisdiction. *Pervasive Software*, 688 F.3d at 231. Moreover, when questioned at oral argument, Ritter was unable to state how the discovery he requested would change the jurisdictional determination. The district court was well within its discretion in denying further discovery.

AFFIRMED.

---

[2] Ritter, as owner of Geneva, would have access to all information regarding Butterfield's communications with him and Geneva's clients in Texas; he would already be aware of Butterfield's "suit-related conduct," which would be the formation and execution of Geneva's account contract.