# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00382-CV

**SprayFoamPolymers.com, LLC, Appellant**

**v.**

**Frank Luciano and Helene Luciano, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT**
**NO. D-1-GN-15-002930, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an appeal from the trial court's denial of the special appearance filed by appellant and defendant below, SprayFoamPolymers.com, LLC, in a lawsuit filed by appellees Frank and Helene Luciano related to the installation of Thermoseal 500, an insulation product produced by SprayFoam, in the Lucianos' new house. On appeal, SprayFoam asserts that (1) the trial court erred in denying its special appearance because the Lucianos did not plead factual allegations or provide evidence that could establish general or specific jurisdiction over SprayFoam; (2) the exercise of jurisdiction over SprayFoam would be unreasonable, would offend traditional notions of fair play and substantial justice, and would be inconsistent with the requirements of due process; and (3) the trial court abused its discretion in admitting the Lucianos' evidence put forth to establish jurisdiction. For the following reasons, we will reverse the trial court's order denying SprayFoam's special appearance.

## Standard of Review

A trial court should resolve a party's special appearance based on the pleadings, any stipulations between the parties, affidavits and attachments filed by the parties, relevant discovery, and any oral testimony put forth before the court. Tex. R. Civ. P. 120a(3). Whether a trial court properly decided whether it could exercise jurisdiction over a nonresident defendant presents a question of law that we review de novo. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016); *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805-06 (Tex. 2002). In making its decision, the trial court often must resolve questions of fact, and if, as here, it does not issue findings of fact, we presume the court resolved all factual disputes in favor of its decision. *Coleman*, 83 S.W.3d at 806. The plaintiff carries an initial burden of pleading allegations sufficient to allow the trial court to exercise personal jurisdiction over the nonresident defendant. *Searcy*, 496 S.W.3d at 66; *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In its special appearance, the defendant has the burden of negating all potential bases for personal jurisdiction as set out in the plaintiff's pleadings. *Searcy*, 496 S.W.3d at 66; *Kelly*, 301 S.W.3d at 658.

Texas courts have personal jurisdiction over a nonresident defendant if Texas's long-arm statute grants jurisdiction and the exercise of jurisdiction comports with federal and state constitutional guarantees of due process. *Searcy*, 496 S.W.3d at 66. "The Texas long arm statute provides for personal jurisdiction that extends to the limits of the United States Constitution, and so federal due process requirements shape the contours of Texas courts' jurisdictional reach." *Id.* The exercise of jurisdiction over a nonresident defendant comports with federal due-process requirements if the nonresident has established "minimum contacts" with Texas and if the exercise of jurisdiction

2

"does not offend 'traditional notions of fair play and substantial justice.'" *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). A nonresident defendant must have purposefully availed itself of "the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws," and its activities, "whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Coleman*, 83 S.W.3d at 806.

In looking to "purposeful availment," we consider only the nonresident's contacts with the forum, not the unilateral activity of another; its contacts with Texas must be purposeful and not random, fortuitous, or attenuated; and it must have sought some benefit, advantage, or profit by availing itself of Texas and the benefits and protections of Texas's laws. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). "[A] nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *see also Coleman*, 83 S.W.3d at 808 (explaining that legal fiction of implied consent to jurisdiction no longer applies when nonresident purposefully structures transactions to avoid benefits and protections of forum's laws).

Minimum contacts with the forum state may give rise to either general or specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016); *Coleman*, 83 S.W.3d at 806. General jurisdiction requires the nonresident defendant's contacts with Texas to have been "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG*

3

*v. Bauman*, 134 S. Ct. 746, 761 (2014) (cleaned up). Specific jurisdiction may be found if there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017). Thus, to exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with Texas must be purposeful, and the cause of action must arise from or relate to those contacts. *Coleman*, 83 S.W.3d at 806.

**Analysis**

With that framework in mind, we now turn to whether SprayFoam negated all possible grounds for jurisdiction as alleged in the Lucianos' pleadings. The Lucianos made the following allegations relevant to jurisdiction: "the events giving rise to this lawsuit" and their associated injuries occurred in Texas; SprayFoam "purposefully availed itself of the privilege of conducting activities in the state of Texas and established minimum contacts sufficient to confer jurisdiction" over SprayFoam, and the exercise of jurisdiction over SprayFoam would not "offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process"; and SprayFoam "engaged in activities constituting business in the state of Texas as provided by Section 17.042 of the Texas Civil Practice and Remedies Code, in that [SprayFoam] committed a tort in whole or in part in Texas."

SprayFoam responded with its special appearance, accompanied by an affidavit of Richard Ettinger, SprayFoam's general manager. In his affidavit, Ettinger averred that: SprayFoam is a limited liability company formed under the laws of Connecticut; its principal office and place of business is in Connecticut; its sole office has always been in Connecticut; SprayFoam has never

4

sought authority to do business in Texas and has no agent for service in Texas; SprayFoam has no employees in Texas, has never held meetings or carried on internal affairs in Texas, and has never had a bank account or leased or owned real property in Texas; orders are submitted to it in Connecticut and are approved, processed, and shipped from there; orders are made by sending payment to SprayFoam's Connecticut address, and title for the product transfers in Connecticut; SprayFoam has never received a payment in Texas; it has never advertised in Texas publications or made unsolicited mailings in Texas; it does not have a Texas phone number; no SprayFoam employee had visited Texas in the last five years; at the relevant time, Preston Nix was its "independent contractor sales representative" in Texas; Nix was also an independent representative for other companies; SprayFoam had no control over or involvement with the operation of Nix's business; Nix did not have the authority to enter into contracts on SprayFoam's behalf; at the relevant time, SprayFoam had a contract with a "Colorado third-party logistics company" for "outsourced logistics in Texas"; and the contracts with Nix and the logistics company were both signed in Connecticut.

In response to SprayFoam's special appearance, the Lucianos provided an affidavit by their attorney, Dawn Smith. Smith attached the following as exhibits: a "screenshot"[1] from Preston Nix's LinkedIn[2] profile, in which he held himself out as SprayFoam's "Southwest Sales

---

[1] "A 'screenshot' is a recorded image of the visible items displayed on a computer monitor." *TrueBeginnings, LLC v. Spark Network Servs., Inc.*, 631 F. Supp. 2d 849, 851 n.1 (N.D. Tex. 2009); *see Burgess v. State*, 742 S.E.2d 464, 823 n.2 (Ga. 2013). In this proceeding, the screenshots in question were asserted to be various webpages as they appeared when Smith was doing her research into the facts of the case.

[2] LinkedIn.com is a website that states that it is "the world's largest professional network" and on which members post profiles describing their professional qualifications and experience. *See* about.linkedin.com (last visited Feb. 7, 2018).

Manager"; a screenshot allegedly from SprayFoam's "locations" web page as of August 2015, which states that the company had a "Grand Prairie TX Distribution Center"[3]; a screenshot showing that the web page "sprayfoampolymers.com" was registered by Richard Ettinger; a screenshot of Nix's page on the Wylie Texas Sports Hall of Honor website that includes his biography, which stated he was "President of Sales for Sprayfoam Polymers"; a listing of attendees at the 2013 Spray Polyurethane Foam Alliance convention, showing that Nix, Ettinger, and two other attendees were affiliated with "Spray Foam Polymers, LLC"; a February 2015 letter to Ettinger from the Lucianos' former attorney stating that "[y]our manufacturer's representative, Preston Nix," had come to the home in October 2014 to assess the situation; screenshots from the web pages of the Texas company hired by the Lucianos to install the Thermoseal 500 product, which show an affiliation with SprayFoam and a link to the Thermoseal 500 product catalog; the invoice for the installation of the product; and an email from that installation company attaching the "spec sheets" for Thermoseal 500, which state that Thermoseal 500 is made by SprayFoam and that if "installed properly by a Spray Foam Polymers authorized representative who has completed all training offered by SFP, SFP warrants that the product will meet all product specifications outlined in this specification document." SprayFoam objected to the affidavit and exhibits on grounds of hearsay, lack of personal knowledge, and lack of authentication, and the trial court overruled most of SprayFoam's objections, admitting into evidence the exhibits and most of Smith's averrments.

---

[3] The screenshot was obtained from an internet archival service, Smith explained, because at some point after SprayFoam was served with citation, the website was changed to show that the Grand Prairie distribution center belongs to "Thermoseal LLC."

*Evidentiary Rulings*

On appeal, SprayFoam complains of the trial court's overruling of its objections, and we agree that on this record, statements in Nix's personal LinkedIn page and his biography on the Wylie Texas Sports Hall of Honor web page are inadmissable hearsay as to SprayFoam. *See Cuffee v. CBL/Richland Mall, LP*, No. 03-07-00265-CV, 2008 WL 2777904, *3 (Tex. App.—Austin July 17, 2008, no pet.) (mem. op.) (discussing when third-party's statement may constitute admission by party-opponent). Likewise, the list of trade-show attendees, which shows an affiliation between Nix and SprayFoam, is hearsay when referenced in an attempt to show that Nix was more than an independent contractor and instead was a SprayFoam employee. The trial court erred in admitting those three items. We sustain SprayFoam's third issue in part.

On this record, it does not appear that the trial court abused its discretion in admitting the rest of Smith's affidavit and the screenshot of SprayFoam's website.[4] Whether it was proper to admit as exhibits the screenshots from the installation company's website is a different question, as it cannot be considered an admission of SprayFoam as a party-opponent. *See, e.g.*, *BP Expl. & Prod., Inc. v. Cashman Equip. Corp.*, No. H-13-3046, 2016 WL 1387907, *11 (S.D. Tex. Apr. 8, 2016) (image of defendant's website may be considered admission by party-opponent). However,

---

[4] Although Smith did not provide an affidavit or other evidence from the archival service that she used to find the screenshot showing that SprayFoam had a Texas distribution center as of August 2015, *see Marten Transp., Ltd. v. Plattform Advert., Inc.*, 184 F. Supp. 3d 1006, 1010-11 (D. Kan. 2016) (party proffered evidence about archival service); *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02 C 3293, 2004 WL 2367740 (N.D. Ill. Oct. 15, 2004) (same), SprayFoam never asserted that the screenshot was inaccurate or falsified, *see BP Expl. & Prod., Inc. v. Cashman Equip. Corp.*, No. H-13-3046, 2016 WL 1387907, *11 (S.D. Tex. Apr. 8, 2016) (plaintiff sought to introduce screenshots from defendants' websites, emphasizing that defendants "have not alleged that any of them are fake").

our determination of SprayFoam's first issue related to its special appearance is not affected by the admission of any of those exhibits. We therefore will assume that the evidence was admitted properly and will proceed without reaching an ultimate conclusion about whether and when it is proper to allow an archived web page into evidence over a hearsay objection under the theory that it contains admissions of a party-opponent.[5] *See id.*

*General Jurisdiction*

The Lucianos assert that SprayFoam had maintained a "continuous and systematic presence" in Texas sufficient to support a finding of general jurisdiction because SprayFoam "owns and operates a distribution center" in Texas; it "obviously . . . employs residents of Texas at this distribution center"; it has trained, certified, and contracted with Texas entities to install SprayFoam products; and it sent Nix as "a representative of [its] company" to the Lucianos' home to evaluate their complaints. However, as the Supreme Court has explained, general jurisdiction is a demanding

---

[5] *See also Silversun Indus., Inc. v. PPG Indus., Inc.*, No. 17 C 4346, __ F. Supp. 3d __, 2017 WL 5127321, *5 n.5 (N.D. Ill. Nov. 6, 2017) (statements on party-opponent's website were admissible as party admission under federal rules of evidence, and authenticity of screenshots "must generally pass muster" under federal rules, as if any other kind of evidence); *Bouton v. Ocean Props., Ltd.*, No. 16-CV-80502, 2017 WL 4792488, *2 n.2 (S.D. Fla. Oct. 23, 2017) (statements by defendant on its website were admissions by party-opponent); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109 (D. Or. 2000) (plaintiff averred to having personally viewed website, and representations made by defendant on website were admissions of party-opponent under federal rules of evidence); *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 857 n.6 (Tex. 2011) ("Where the Federal Rules of Evidence are similar, we may look to federal case law for guidance in interpreting the Texas evidentiary rules."); *Long Island Vill. Owners Ass'n v. Berry*, No. 13-14-00363-CV, 2016 WL 1072856, *13 (Tex. App.—Corpus Christi Mar. 17, 2016, pet. denied) (mem. op.) (jury ultimately decides whether evidence is what proponent claims it to be, and trial court does not abuse its discretion if proponent sufficiently shows authenticity of evidence).

standard and "only a limited set of affiliations with a forum" will render a nonresident subject to general jurisdiction there. *Daimler AG*, 134 S. Ct. at 760. Further, the Court emphasized that it would be an "exceptional case" in which a company's activities in a state other than its principal place of business or formal place of incorporation might be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n.19; *see Bristol-Myers*, 137 S. Ct. at 1780 ("'only a limited set of affiliations with a forum'" will give rise to general jurisdiction (quoting *Daimler AG*, 134 S. Ct. at 760)); *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558-59 (2017) (repeating that only in "exceptional" cases will nonresident corporation's operations in another state give rise to general jurisdiction); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925-29 (2011) (discussing only two cases in which Supreme Court found general jurisdiction to exist in forum other than party's home state). On these facts, in which the alleged contacts with Texas are SprayFoam's hiring of an independent sales representative, having a distribution center in Texas, and training installers located in Texas, the Lucianos have not established the level of substantial and continuous contacts with Texas so as to give rise to general jurisdiction. *See Tyrrell*, 137 S. Ct. at 1558-59 (railway with over 2,000 miles of track and 2,000 employees in Montana did not have sufficient activity in Montana as to allow for exercise of general jurisdiction); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *Crossroads Fin., LLC v. A.D.I.M. Glob. Co.*, No. 05-16-00486-CV, 2016 WL 7220970, *9 & n.7 (Tex. App.—Dallas Dec. 13, 2016, no pet.) (mem. op.) ("Even if [Florida company] could be said

to engage in continuous and systematic contacts with Texas by serving the Texas clients who comprise three percent of its business, [company] is not 'at home' in Texas.").

*Specific Jurisdiction*

We now consider whether the record can support a determination of specific jurisdiction. As noted earlier, to establish specific jurisdiction, the Lucianos' lawsuit must arise out of or relate to SprayFoam's contacts with Texas. *See Bristol-Myers*, 137 S. Ct. at 1780 (specific jurisdiction may only be exercised to adjudicate issues deriving from or connected to nonresident's activities that allegedly establish jurisdiction).

To support their argument that the exercise of specific jurisdiction is proper, the Lucianos point to SprayFoam's sale of its product to Texas residents, its statement online that it had a Texas distribution center, its training and certifying of installers located in Texas, and its retention of Nix as a representative in Texas. However, Nix visited the Lucianos' home after the installation of the Thermoseal 500. Even if the Lucianos had shown that Nix's relationship with SprayFoam was something other than as an independent contractor, their claims are related to the installation of the SprayFoam product and are not derived from or connected to SprayFoam's relationship with Nix.

As evidence of SprayFoam's training and certifying the Texas installation company, the Lucianos next point to the invoice from the installation company for the installation of the Thermoseal 500, pages from the installation company's website, and an email from the company attaching the product specifications for Thermoseal 500. However, the Lucianos did not present evidence that they selected the installer because of its relationship with or training and certification by SprayFoam. In fact, the record does not reflect that the Lucianos specifically chose the

10

Thermoseal 500 product or even knew that Thermoseal 500 was the product that had been used until some time after the installation was completed. The invoice states only that the installation company installed "½ lb Open Cell" "Foam" in the Lucianos' house and does not mention SprayFoam or Thermoseal 500, and the installation company's email, sent a year after the installation, stated, "I have attached the spec sheets on the product we used on your project."

Indeed, the evidence does not establish that the installation company was actually trained and certified by SprayFoam. Smith stated in her affidavit that the installation company's web pages reflected that the company was "a 'certified foam spray installer' of" SprayFoam. However, those web pages are from the installation company's website, not from SprayFoam's, and therefore cannot be considered an admission by SprayFoam itself. Further, the installation company's web pages produced as exhibits state only that the company is a "certified foam spray installer," and there is no information provided about that certification or what entity issued the certification. Some of the installation company's web pages bear the SprayFoam logo, but they also bear the logos of at least one other insulation foam company and of several other companies or trade groups. Likewise, the installation company's page with links to SprayFoam's product catalogs also links to catalogs for products made by the other insulation foam company. As for the Thermoseal 500 specification sheet prepared by SprayFoam and emailed to the Lucianos by the installation company a year after the installation, Smith averred that the specification sheet "provides that the product is sold by 'authorized representative[s] who [have] completed training offered by'" SprayFoam. However, the specification sheet actually states, under the heading "Warranty," the following: "When installed properly [by] a [SprayFoam] authorized representative who has completed all training offered by

11

[SprayFoam], [SprayFoam] warrants that the product will meet all product specifications outlined in this specification document."

Viewed carefully, Smith's affidavit and the attached exhibits presented no evidence about the training allegedly received by the installation company, such as where or by whom it was conducted, its contents, or its duration. That evidence cannot, therefore, be considered as showing that SprayFoam had purposefully established contacts with the installation company or that the Lucianos' lawsuit arose from such contacts, much less that those training-related contacts were sufficient to make it fair and reasonable to subject SprayFoam to jurisdiction in Texas.[6] *See Bristol-Myer*, 137 S. Ct. at 1780.

Finally, although the Lucianos assert on appeal that the product installed in their home was shipped through SprayFoam's Texas distribution center to install in the home, pointing to the allegations in their petition, the petition did not allege where the Thermoseal 500 was shipped from,

---

[6] The Lucianos cite us to *Huynh v. Nguyen*, in which our sister court held that it was proper to subject Unity Outpatient Surgery Center L.L.C., a California surgery center, to jurisdiction in Texas. 180 S.W.3d 608, 620-21 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, in *Huynh*, a Texas resident testified in her deposition that she worked for and understood that she was an employee of "Unity," that "Unity" paid her a salary to solicit patients and reimbursed her advertising costs, that she had never heard of "Unity Outpatient Surgery Center, L.L.C.," and that she was instead paid by "Unity Outpatient Surgery Center, Inc." *Id.* at 620. The court held that the trial court could have concluded that the "Unity" that paid the Texas resident was in fact the LLC. *Id.* It further held that the record supported findings that the Texas resident was the LLC's agent or employee, that she solicited patients for the LLC in Texas, and that the claims arose out of the LLC's purposeful contacts with Texas. *Id.* The facts presented in that case are different from the sparse evidence presented on this record of any purposeful availment by SprayFoam of the privilege of doing business in Texas.

nor did they attach affidavits or other evidence to their response to SprayFoam's special appearance that might show how the Thermoseal 500 product was sent to the Lucianos' project.[7]

SprayFoam presented evidence that it had not purposefully established minimum contacts with Texas. We cannot hold on this record that the Lucianos' evidence rebutted that evidence or that their claims arose or were derived from such contacts. Without such a connection, there can be no exercise of specific jurisdiction "regardless of the extent of a defendant's unconnected activities in the State." *See Bristol-Myers*, 137 S. Ct. at 1781. We sustain SprayFoam's first issue on appeal.

## Conclusion

Because we conclude that the trial court lacks specific or general jurisdiction over SprayFoam, we reverse the trial court's order denying SprayFoam's special appearance. We render judgment dismissing SprayFoam from the Lucianos' lawsuit.

---

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Reversed and Rendered

Filed: March 9, 2018

---

[7] We note that the Supreme Court recently disapproved of the "sliding scale" approach to specific jurisdiction as originally used in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (discussing "sliding scale" of interactivity of nonresident defendants' websites). The Court stated that it was "difficult to square" its precedents with the "sliding scale" approach and that such an approach "resembles a loose and spurious form of jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017).