In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00470-CV
_____

**MICHAEL SIMMONS, Appellant**

**V.**

**BOYD GAMING CORPORATION AND DELTA DOWNS RACETRACK
CASINO AND HOTEL, Appellees**

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. B-198,636**

**MEMORANDUM OPINION**

Michael Simmons appeals the trial court's interlocutory order granting the joint special appearance filed by Boyd Gaming Corporation and Delta Downs Racetrack Casino and Hotel. The trial court did not reduce its findings and conclusions to writing, but its ruling implies that it found that the two businesses were not incorporated in Texas, and that the two businesses did not have their principal place of business there. Because the evidence failed to show that the

1

businesses were at home in Texas, and because Simmons failed to demonstrate that his claims against the businesses had a substantial connection with the forum in Texas, we affirm the order granting the businesses' request to be dismissed from the case.

Background

On May 28, 2016, Billy Eston Horton[1] drove to Vinton, Louisiana to gamble at Delta Downs Racetrack Casino and Hotel (Delta Downs).[2] According to the allegations in the Plaintiff's Second Amended Original Petition,[3] while at Delta Downs, Horton was served alcoholic beverages after it would have been obvious to the individuals who were serving him that he was intoxicated. The evidence before

---

[1] For the purpose of disclosing potential conflicts, we note that Justice Horton is not related to Billy Eston Horton.

[2] The pleadings filed on behalf of Delta Downs indicate that Delta Downs is used as an assumed name for Boyd Racing, LLC, and that Boyd Racing is a limited liability company organized under the laws of Louisiana. The evidence in the record also reflects that Boyd Gaming is the parent corporation of Boyd Racing, LLC. In the opinion, we use Delta Downs when referring to Boyd Racing, LLC, as that is the name the business uses in its advertising in Southeast Texas.

[3] The Plaintiff's Second Amended Original Petition was the live petition that was before the trial court when it ruled on the joint special appearance filed by the defendants.

the trial court when it ruled on the joint special appearance includes two affidavits[4] that Horton executed, which Simmons filed to support his argument that the trial court could exercise jurisdiction over Boyd Gaming and Delta Downs. Both of Horton's affidavits indicate that he had been drinking at Delta Downs before the collision occurred, but both are silent on the subject of whether Horton became intoxicated at the casino, whether Horton was aware he was intoxicated when he left the casino, or how those serving him might have known that he was intoxicated. Nevertheless, several facts were undisputed in the hearing, including that Horton owned the car he was driving when the collision occurred, that Simmons suffered injuries when Horton's vehicle struck the vehicle Simmons was driving, that Delta Downs' employees served Horton beverages containing alcohol while he was at Delta Downs, and that Horton's and Simmons' vehicles collided in Jefferson County, Texas. After the collision, Simmons sued Horton, Boyd Gaming and Delta Downs in a district court in Jefferson County, Texas claiming that their negligence proximately caused the injuries that he suffered in the collision. Although Simmons' live pleadings allege a general negligence claim, he characterized his claims against

---

[4] Two affidavits executed by Horton were before the trial court when it ruled on the joint special appearance. Horton executed the first affidavit in September 2016, and he executed the second in November 2016.

3

Boyd Gaming and Delta Downs during the hearing and in his appeal as claims based on violations of the Texas Dram Shop Act. *See* Tex. Alco. Bev. Code Ann. § 2.02(b)(1), (2) (West 2007) (creating a statutory cause of action against a person who provides, sells or serves alcohol to a person when it was "apparent to the provider that the individual" served an "alcoholic beverage was obviously intoxicated" if the individual's intoxication was a proximate cause of the plaintiff's injuries).

In response to Simmons' suit, Boyd Gaming and Delta Downs filed a joint special appearance.[5] In the joint special appearance, Boyd Gaming and Delta Downs alleged that they were not Texas residents, that they had not purposefully performed an act or transaction in Texas that would allow a Texas court to exercise jurisdiction over them, and that no substantial connection existed between Simmons' claims against them and their conduct in Texas.

---

[5] The joint special appearance as initially filed was not verified; however, the Texas Rules of Civil Procedure allows defects in special appearances to "be amended to cure defects." *See* Tex. R. Civ. P. 120a(1). Prior to the hearing the trial court conducted on the joint special appearance, Boyd Gaming and Delta Downs amended the special appearance and attached the unsworn declaration of Diane Mitnik to their amended pleading. *See* Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a) (West Supp. 2016) (with exceptions that are not pertinent here, allowing unsworn declarations to be used in lieu of written sworn declarations, verifications, certifications, oaths or affidavits when a rule or statute requires an affidavit).

Additionally, Boyd Gaming and Delta Downs supported their special appearance with an unsworn declaration executed by Diane Mitnik, their authorized representative. Mitnik's declaration states that Boyd Gaming is a Nevada corporation whose principal place of business is in Las Vegas, Nevada, and that Delta Downs is a Louisiana limited liability company whose principal place of business is in Vinton, Louisiana. Mitnik's declaration further states that Boyd Gaming and Delta Downs do not have registered agents in Texas, that the officers of the businesses do not reside in Texas, that neither business has offices, bank accounts, or property in Texas, that the two businesses do not pay taxes in Texas, and that neither business purposefully directed its activities toward Texas "regarding any facts or circumstances of this case[.]" The statements in Mitnik's unsworn declaration rebutted Simmons' allegations that Boyd Gaming and Delta Downs committed acts in Texas that were relevant to Simmons' Dram Shop Act claims.

Simmons filed a number of documents before the hearing that he obtained in discovery. The documents Simmons filed include an affidavit from Newton Schwartz, the principal attorney in the firm representing Simmons. Schwartz's affidavit summarizes the documents that Simmons acquired in discovery. Prior to the hearing on the joint special appearance, Simmons also filed two affidavits that Horton executed before the hearing. These indicate that Horton had been drinking at

5

Delta Downs on the evening of the collision, that Horton received advertising from Boyd Gaming and Delta Downs that was e-mailed to him, that these e-mails promoted the benefits of his membership with Boyd Gaming as a B Connected Cardmember, and that the benefits he was receiving as a B Connected Cardmember "were the enticements [that caused] me to travel to the casino on the evening in question as those same enticements have caused me to participate in gaming activities at the casino prior to the date of this incident." However, the e-mails that Horton claimed he received that prompted him to go to Delta Downs in the period relevant to his collision with Simmons were not included among the documents the trial court was asked to consider in ruling on the joint special appearance. Additionally, the evidence in the record regarding the benefits enjoyed by Boyd Gaming's B Connected Cardmembers shows that the privileges of that type of membership entitle an individual to have a personalized home page with Boyd Gaming's online player community, to have access to Boyd Gaming's offers and promotions, to receive the best rates available on hotel rooms, to receive offers, promotional calendars, and real-time alerts about current offers, to allow members to view the balances in their accounts, to have real-time account access, to access hotel and dining reservations online, to allow members to locate their favorite slot machines at all Boyd Gaming casinos, and to have access to webcams featuring live

6

shots from Boyd gaming casinos around the country. In summary, the marketing material that is actually in the record shows marketing that generally promotes gaming at Boyd Gaming casinos, and there was no advertising or e-mail solicitations in the record showing that Boyd Gaming and Delta Downs advertised the availability of complimentary alcoholic beverages in Texas to the public or to those with B Connected memberships.

The evidence before the trial court included vendor summaries showing that Delta Downs purchased over $6,000,000 in goods and services from Texas vendors in the twenty-nine month period before the collision occurred, and that Delta Downs spent approximately $2,500,000 advertising in Southeast Texas over a twenty-seven month period ending on June 30, 2016. However, the summaries showing that Delta Downs did business with Texas-based businesses do not reflect whether those contracts were performed in Texas or whether they were performed in Louisiana. Nonetheless, the record does not show that the trial court refused to consider any of the documents the parties submitted to support their arguments on the merits of the joint special appearance, so we presume the trial court considered all of the documents that were before it when it decided to grant the joint special appearance. *See* Tex. R. Civ. P. 120a(3).

7

The trial court conducted a hearing on Boyd Gaming's and Delta Downs' joint special appearance in November 2016. No witnesses testified during the hearing. Approximately one week after the hearing, the trial court granted the joint special appearance, dismissing Boyd Gaming and Delta Downs from Simmons' suit.

After the trial court dismissed the case, Simmons asked the trial court to issue findings of fact and conclusions of law to explain the reasons for its ruling. *See* Tex. R. Civ. P. 296 (requiring that a party file its request for findings within twenty days of the trial court's ruling). Although Simmons asked the trial court for written findings, the record reflects that no written findings or conclusions were filed. Simmons timely filed his notice of appeal, authorizing our review of the trial court's order. *See* Tex. R. App. P. 26.1(b) (requiring that a party file a notice of appeal from an interlocutory order that is immediately appealable within twenty days after the order is signed).

## Issues Presented

On appeal, Simmons argues the trial court erred by dismissing his claims against Boyd Gaming and Delta Downs because the trial court had both general and specific jurisdiction over Boyd Gaming and Delta Downs with respect to his Dram Shop Act claims. While Simmons' brief identifies seven separate issues, his issues actually present only two arguments that the pleadings and the evidence relevant to

the resolution of the joint special appearance demonstrated that the trial court had the right to exercise general and specific jurisdiction over his Dram Shop Act claims. Generally, Simmons argues that the evidence before the trial court reflects that the business contacts of Boyd Gaming and Delta Downs are continuous and systematic enough to justify the exercise of general jurisdiction, and that the marketing of Delta Downs in Southeast Texas and to Horton required the trial court to conclude that Simmons' Dram Shop Act claims were substantially related to the activities the businesses conducted in the State of Texas.

Standard of Review

Whether a trial court has jurisdiction over a defendant presents an issue that is to be decided as a matter of law; as a result, the trial court's decision on a special appearance is reviewed using a *de novo* standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Trial courts are required to resolve special appearances based on the parties' pleadings, any stipulations between the parties, the affidavits and attachments that the parties file with their pleadings, the results of any discovery, and any oral testimony presented during the hearing on the special appearance. Tex. R. Civ. P. 120a(3). In hearings on special appearances, the plaintiff and the defendant bear shifting burdens of proof. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). As the plaintiff, Simmons had the

initial burden of filing pleadings that included allegations of fact that were sufficient to demonstrate that Boyd Gaming and Delta Downs could be sued based on the provisions found in the Texas long-arm statute. *See BMC Software*, 83 S.W.3d at 793; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (West 2015) (Long-Arm Jurisdiction in Suit on Business Transaction or Tort).

Under the Texas long-arm statute, Texas courts may exercise personal jurisdiction over nonresidents "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795 (citation omitted); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. With respect to claims sounding in tort, the Texas long-arm statute provides that a nonresident is doing business in Texas if the nonresident "commits a tort in whole or in part in this state[.]" Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). Therefore, in considering Simmons' claim that Boyd Gaming and Delta Downs violated the Dram Shop Act, the trial court was required to decide whether Simmons alleged that the tort occurred in whole or in part in Texas and to decide whether Simmons established that the allegedly tortious conduct of Boyd Gaming and of Delta Downs occurred in whole or in part in Texas.

If the pleadings allege sufficient facts to show that a defendant is subject to the Texas long-arm statute, a defendant may challenge the validity of the factual allegations in the plaintiff's pleadings by filing a special appearance. Tex. R. Civ. P.

120a(1). The special appearance is to be made by sworn motion, and the sworn motion should negate the factual allegations in the plaintiff's pleadings that, if not negated, would allow the trial court to conclude that the conduct the nonresidents allegedly committed occurred in Texas. *See BMC Software*, 83 S.W.3d at 793; Tex. R. Civ. P. 120a(1).

Based on the statements in Mitnik's declaration, the burden of proof shifted to Simmons to prove that Boyd Gaming and Delta Downs, respectively, each had its principal place of business in Texas, that each committed a tort in whole or in part in Texas, or that each business's activities within the State of Texas gave rise to Simmons' Dram Shop Act claim. *See Kelly*, 301 S.W.3d at 659 (noting that after the defendant negates plaintiff's allegations regarding jurisdiction, "[t]he plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction"). Nonetheless, evidence showing that a nonresident had contracts with Texas businesses is not necessarily sufficient to establish that the nonresident's contacts are sufficient to allow a Texas court to exercise jurisdiction over a nonresident when the plaintiff's claims are unrelated to the contracts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985). Additionally, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant

11

cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In ruling on a special appearance, a trial court may be required to resolve disputed issues of fact. *See BMC Software*, 83 S.W.3d at 794. In his brief, Simmons argues that because the trial court failed to provide him with findings based on his request, we cannot imply the findings required to support the trial court's ruling. *See* Tex. R. Civ. P. 296 (Omitted Findings). We disagree that the implied findings rule does not operate in a case that involves an appeal from a ruling that is interlocutory. Rule 28.1(c) of the Texas Rules of Appellate Procedure provides that a trial court need not file findings of fact when the appeal concerns an interlocutory order. *See* Tex. R. App. P. 28.1(c). Appeals from orders denying special appearances are appeals from interlocutory orders. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (holding that the trial court did not commit error by refusing a request to enter findings); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West Supp. 2016) (permitting appeal from interlocutory orders that grant or deny a special appearance under Rule 120a). Consequently, the trial court was not required to provide Simmons with written findings to support its ruling with respect to the joint special appearance because an order on a special appearance is interlocutory.

Simmons relies on Rule 296 of the Texas Rules of Civil Procedure to support his argument that he was entitled to written findings. *See* Tex. R. Civ. P. 296. However, Rule 296 gives "a party a right to findings of fact and conclusions of law finally adjudicated after a conventional trial on the merits before the court." *Ikb Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). Nevertheless, a ruling on a special appearance does not result from a conventional trial on the merits of a parties claims, so the rules that generally require trial court's to make written findings after a party files a proper request for them do not apply to rulings that are interlocutory.[6] *See Waterman*, 355 S.W.3d at 428; *see also* Tex. R. Civ. P. 296, 297.

Because this appeal involves an interlocutory order, we are required to resolve any conflicts in the evidence by implying that the trial court resolved all disputed facts in a manner consistent with the trial court's ruling if the findings we imply are

---

[6] Rules 296 and 297 of the Texas Rules of Civil Procedure are the rules that allow parties to request written findings in cases that are tried to the bench. Moreover, even if we were to accept Simmons' argument that he was entitled to written findings, Simmons failed to file a notice of past due findings, which is required by Rule 297. *See* Tex. R. Civ. P. 296, 297. Simmons waived his complaint about the trial court's failing to provide him with written findings because he failed to file a notice of past due filings. *See Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 428 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

supported by the record. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *see also BMC Software*, 83 S.W.3d at 795.

Specific Jurisdiction

First, we address whether the trial court erred in rejecting Simmons' arguments that the trial court possessed specific jurisdiction over Simmons' claims against Boyd Gaming and Delta Downs. In his brief, Simmons contends that Boyd Gaming and Delta Downs purposefully directed advertising at Texas residents such as Horton, and that the businesses should have foreseen they would be sued in Texas should Texas residents become intoxicated at Delta Downs and then cause a collision after leaving there.

At the outset, we note that the allegations that are in Simmons' pleadings do not include a negligent promotion claim. *See Triplex Commc'ns v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995). While Simmons' pleadings generally allege that the business defendants committed a tort in Texas by violating the Dram Shop Act, Mitnik's declaration disputed those allegations, so Simmons was required to present evidence proving that "(1) the defendant's contacts with [Texas was] purposeful, and (2) the cause of action [arose] from or relate[d] to those contacts." *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002).

14

Simmons characterizes his claims against Delta Downs and Boyd Gaming as Texas Dram Shop Act claims.[7] According to Simmons, Boyd Gaming and Delta Downs violated the Texas Dram Shop Act by continuing to serve Horton after their employees knew he was intoxicated. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 395

---

[7] We express no opinion on the merits of Simmons' Dram Shop Act claims. Nevertheless, we note that the Texas Dram Shop Act requires the plaintiff to prove that the person who became intoxicated was sold or served alcoholic beverages by a "provider," which is defined in the Act as a person licensed by the State of Texas to sell or serve alcohol. *Compare* Tex. Alco. Bev. Code Ann. §§ 2.01(1), 2.02(b)(1) (West 2007), *with El Chico Corp. v. Poole*, 732 S.W.2d 306, 310 (Tex. 1987), *superseded by statute*, Texas Dram Shop Act, *as recognized in F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 684-85 (Tex. 2007). The evidence before the trial court does not directly address whether Delta Downs or Boyd Gaming were licensed by the State of Texas to sell alcohol, but the general statements in Mitnik's affidavit addressing the business activities of Boyd Gaming and Delta Downs suggests they are not. We further note that under Louisiana law, a person injured by a patron who became intoxicated while drinking in a bar does not have a claim against the bar for serving the person who was drinking in the bar beverages containing alcohol. *See* La. R.S. § 9:2800.1(B) (LEXIS through 2017 First Extraordinary Sess. Legis.) (providing that no licensed permit holder, their agents, or their employees who serve intoxicating beverages to a person old enough to lawfully purchase the beverage "shall be liable to such person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises, including wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served"); *Morris v. Bulldog BR, LLC*, 147 So. 3d 1122 (La. App. [1st Cir.] 2014, writ denied) (holding that the plaintiff, injured by a drunk driver who became intoxicated at a Baton Rouge bar had no cause of action against the bar to recover for his injuries based on Louisiana's anti-dram shop act). Nonetheless, to resolve the issues in the appeal, we need to decide whether Texas or Louisiana law would apply to the merits of Simmons' Dram Shop Act claims had the trial court denied Boyd Gaming's and Delta Downs' request to dismiss them from the suit.

(Tex. 2008) (citing Tex. Alco. Bev. Code Ann. § 2.02(b)). Under the Texas Dram Shop Act, a Dram Shop Act claim is "the exclusive cause of action for providing an alcoholic beverage to a person 18 years of age or older." Tex. Alco. Bev. Code Ann. § 2.03(c) (West 2007).

During the hearing on the special appearance, Simmons provided the trial court with evidence showing that Horton drank beverages[8] at Delta Downs containing alcohol. However, there is no evidence in the record that any of the acts of serving alcohol occurred in the State of Texas. *See* Tex. Alco. Bev. Code Ann. § 2.02(b)(1), (2). While Horton's affidavits indicate that his decision to patronize Delta Downs was influenced by the fact that he held a membership with certain benefits through Boyd Gaming, the Texas Dram Shop Act does not require a plaintiff to prove why an individual chose to drink at an establishment to prove a claim under the Act.

---

[8] Simmons' pleadings do not distinguish between Boyd Gaming and Delta Downs regarding whose employees he claims served Horton while Horton was at Delta Downs. Instead, Simmons alleged that Boyd Gaming and Delta Downs "freely and unlimitedly upon Horton's request, without any extra charge or payment, served him unlimited alcoholic beverages to him as a business invitee and prior (sic) preferred customer[.]" Simmons' pleadings against Boyd Gaming relies on an alter ego theory, as he alleged that "Delta [Downs] is a subsidiary, affiliated, related and/or wholly and/or 80% owned, controlled, micro and macro managed subsidiary, affiliate, related and/or of Boyd [Gaming] as to be an alter ego of Boyd." Nonetheless, we need not decide whether Simmons alleged sufficient facts to shift the burden to Boyd Gaming to prove that Delta Downs was not its alter ego to resolve the issues in the appeal.

16

Instead, the Act focuses on the decision the provider's employees made to continue to serve a customer beverages containing alcohol after it became apparent that the customer was intoxicated. *See* Tex. Alco. Bev. Code Ann. § 2.01-.03 (West 2007).

Horton's affidavit seems to suggest that but-for his membership at Delta Downs, he might not have chosen to go there. However, under Texas law, a but-for causation test is insufficient to prove that a court possesses jurisdiction over a nonresident defendant. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 581 (Tex. 2007). In *Moki Mac*, the Texas Supreme Court stated that given the constitutional limitations on a court's exercise of jurisdiction over nonresidents, "a but-for test [is] too broad and judicially unmoored to satisfy due-process concerns." Instead, Texas law requires that the plaintiff's claims have a substantial connection with the State. *Id.* at 585. Under the substantial-connection test, the evidence and pleadings are required to demonstrate a "substantial connection between [the nonresident's purposeful actions or conduct directed at Texas] and the operative facts of the litigation." *Id.*

In this case, the evidence reflects that Delta Downs and Boyd Gaming directed their conduct at Texas by marketing Delta Downs and Boyd Gaming in Texas. The evidence in the hearing reflects that Delta Downs spent several million dollars marketing its casino by using several types of advertising that it purchased in

17

Southeast Texas markets.[9] However, the evidence regarding the marketing of Delta Downs does not show that the marketing included advertising about the availability of complimentary alcoholic beverages at Delta Downs. Simmons also relies on contacts that Delta Downs and Boyd Gaming had with Horton through its website. Valentina Matte, the marketing director for Delta Downs, described Delta Downs' internet website during her deposition. She indicated that customers who desired to do so could sign up to receive promotional material from Delta Downs by signing up with Boyd Gaming on its website. Matte explained that Delta Downs sent customers who agreed to receive promotional advertising e-mails, which alerted them about upcoming events at Delta Downs. Generally, the evidence in the record regarding the marketing of Delta Downs shows that Delta Downs was marketed in Texas as a place where people could spend the night after gambling at the company's racetrack and casino. However, the evidence regarding the website is insufficient to establish specific jurisdiction because the information in the record regarding the

---

[9] Simmons attached all of the information he received during discovery as exhibits to his Second Amended Original Petition. In resolving the appeal, we have considered all of the documents Simmons attached to his pleadings because the record does not show the trial court refused to consider them. *See* Tex. R. Civ. P. 120a(3) (requiring the trial court to determine special appearances "on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony").

18

website failed to establish a substantial connection between the information Horton saw on the website and Horton's decision to drink excessively while he was at Delta Downs. *See id*. Moreover, while the evidence regarding the website shows that Boyd Gaming and Delta Downs were doing business with Texans, it does not show that they were doing business in Texas. *See Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

There was also evidence Horton became a B Connected Cardmember with Delta Downs before the collision between Horton's vehicle and Simmons' vehicle occurred. After becoming a B Connected Cardmember, Delta Downs sent Horton alerts about events being promoted at Delta Downs. However, none of the promotional material described by Horton in his affidavits is in the record, and none of the promotional material in the record shows that Delta Downs promoted or advertised its business in Southeast Texas on the basis that individuals holding B Connected memberships would be served alcoholic beverages without charge. Moreover, none of the evidence regarding the marketing of Delta Downs indicates that the casino was marketed in Southeast Texas as a place where people would continue to be served beverages containing alcohol after they were intoxicated. The evidence regarding the direct promotion of Delta Downs to Horton is insufficient to establish specific jurisdiction because the information in the record regarding the

19

direct marketing done by Boyd Gaming and Delta Downs failed to establish that a substantial connection exists between the information Horton received through the direct marketing efforts of the businesses and Horton's decision to drink excessively while at Delta Downs. *Id*. Even if the marketing efforts of the businesses were purposefully directed at Horton so that they could maintain their relationship with him, the purposeful acts of marketing a business is an insufficient contact without more to support a court's exercise of jurisdiction over a nonresident based on allegedly tortious acts that occurred outside the State of Texas. *See Moki Mac*, 221 S.W.3d at 578-79; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

To establish that the trial court had jurisdiction over the nonresident businesses, Simmons was required to demonstrate that their liability arose from or related to the contacts Horton had with them in the State of Texas. *See Moki Mac*, 221 S.W.3d at 578-79. Evidence that shows merely some connection between the contacts and the plaintiff's cause of action is not sufficient. *Id*. Additionally, the connection between the litigation, the forum, and the nonresident's contacts with the forum must be substantial. *Id.* at 584. In this case, the evidence allowed the trial court to conclude that all of the acts of serving alcohol occurred in Louisiana. While Horton's affidavit states that as a B Connected Member he received solicitations

"from the Casino and its affiliates to come to their facilities and stay overnight, gamble, dine, and drink alcoholic beverages," his affidavit does not tie his decision to drink excessively to any of the material Boyd Gaming or Delta Downs sent him promoting the casino. Horton's affidavits do not suggest that the advertisements and solicitations he received directly from Boyd Gaming or Delta Downs promoted a specific event encouraging individuals to drink irresponsibly, or that the advertising he received from the businesses made him drink irresponsibly on the evening that his collision with Simmons occurred. Finally, the evidence showing the benefits of a B Connected Membership that is in the record does not show that B Connected members are solicited by the businesses based on advertising that members will receive complimentary alcoholic beverages while at Boyd Gaming facilities.[10]

Generally, advertising that promotes legal gambling is considered too attenuated to allow a court in one state to exercise specific jurisdiction over a nonresident on the basis of the nonresident's advertisements. *Id*. at 586 (explaining that a nonresident's in-state advertising generally provides an insufficient basis for

---

[10] In her deposition, Valentina Matte described the B Connected Membership as a rewards program that allowed the member to receive information about promotions in the facilities and that the program involved giving members complimentary or discounted rooms for overnight stays depending on the amount they gambled.

a court to exercise specific jurisdiction over a plaintiff's personal injury claims). The evidence before the court about Delta Downs' advertising reflects that it was promoting the availability at its casino of various games of chance,[11] and none of the evidence showed that Delta Downs promoted the availability of complimentary alcoholic beverages in its advertising. *Id*. at 584. We conclude that the evidence relevant to the special appearance hearing failed to demonstrate a substantial connection between the forum, the nonresident defendants, and the operative facts of the litigation. *Id*. at 588. We affirm the trial court's conclusion that Simmons failed to establish that the trial court could exercise specific jurisdiction over both Boyd Gaming and Delta Downs based on his Dram Shop Act claims.

General Jurisdiction

Simmons also contends that Boyd Gaming's and Delta Downs' business activities in Texas demonstrated that the nonresident corporate defendants had sufficient continuous and systematic contacts to allow a Texas court to exercise

---

[11] The actual advertisements that were run by Delta Downs in Southeast Texas were not before the trial court, but a list that Delta Downs produced in discovery shows the promotions in various months that include the month the collision between Horton and Simmons occurred, May 2016. The promotions advertised in May 2016 were named "Tip of the Hat" and "Cowboy Up Pick and Win." While the evidence indicates that Delta Downs advertised on billboards in Southeast Texas in various months that included May 2016, the summary that was provided regarding Delta Downs' advertising fails to reveal anything about the content of the advertisements that appeared on billboards.

22

general jurisdiction over them. With respect to general jurisdiction, the trial court was required to decide if the nonresident defendants' respective affiliations with the forum state are so continuous and systematic as to render them at home in the forum where the plaintiff filed his suit. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67, 72 (Tex. 2016).

The evidence before the trial court showed that Delta Downs purchased goods and services from Texas-based vendors and suppliers having a value of approximately $6,000,000 in the twenty-nine month period before the collision occurred, and that Delta Downs purchased approximately $2,500,000 in advertising in Southeast Texas in the twenty-seven months before Simmons was injured. Boyd Gaming and Delta Downs argue that the business was not shown to be related to Simmons' Dram Shop Act claims, and that the volume of business, even if continuous and systematic, were not so continuous and systematic as to render them essentially at home in Texas.

The United States Supreme Court recently considered the requirements needed to establish that a court has general jurisdiction over a foreign corporation that does not have its principal place of business in the forum in which it was sued in *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014). In *Daimler*, the Court explained that, absent exceptional circumstances unlike those found here, corporate defendants

23

are "at home" in only two forums—the state where the company incorporated, or the state in which the corporation has its principal place of business. *Id.* at 760. According to the Court, "[t]hese bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

Here, the relevant evidence regarding the two nonresident businesses shows that Boyd Gaming is incorporated under the laws of the State of Nevada, and that Boyd Racing, LLC, which operates under an assumed name as Delta Downs Racetrack Casino and Hotel, was formed under the laws of the State of Louisiana. Most of the statements in Mitnik's declaration are uncontested, including her statement that Boyd Gaming and Delta Downs are not registered to do business in Texas, do not maintain offices or a place of business in Texas, do not have an address or telephone number in the State of Texas, do not hold shareholder meetings in Texas, do not pay taxes to the State of Texas, do not have bank accounts in Texas, and do not own property in Texas. The primary evidence regarding the contacts of the two nonresident businesses in Texas relate to the advertising that Delta Downs purchased in Texas advertising markets, and to a vendor's list, which shows that Delta Downs purchased goods and services from Texas companies. Although the evidence shows that the business activities of Boyd Gaming and of Delta Downs in

24

Texas were continuous and systematic, the volume of the transactions did not require the trial court to conclude that Boyd Gaming and Delta Downs had moved their respective principal places of business to Texas given the statements found in Mitnik's affidavit about the nature of the business activities the businesses conducted in Texas. Given evidence reflecting that Delta Downs' principal place of business is in Louisiana, where it operates Delta Downs, together with Mitnik's declaration stating that Boyd Gaming's principal place of business is in Nevada, the trial court did not err when it concluded that the companies were not at home in Texas.

Although the volume of business that Boyd Gaming and Delta Downs conduct with Texas businesses was substantial, that evidence does not show the dollar volume of the business conducted in Texas exceeds the dollar volume of the business that Boyd Gaming conducts in Nevada and that Delta Downs conducts in Louisiana. In *Daimler*, the Court explained that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts." *Id*. at 762 n.20 (internal citation omitted). Instead, the general jurisdiction question "calls for an appraisal of a corporation's activities in their entirety[.]" *Id*. Simmons failed to provide the trial court with evidence showing the activities of the businesses in their entirety, and the

evidence before the court did not show that the businesses had offices or corporate officials located in Texas.

Based on the evidence the trial court had before it in the hearing, we agree with the trial court that Simmons failed to demonstrate that a Texas court could exercise specific or general jurisdiction over Simmons' Dram Shop Act claims. We overrule all of Simmons' issues, and we affirm the trial court's ruling.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on March 29, 2017
Opinion Delivered August 3, 2017

Before McKeithen, C.J., Horton and Johnson, JJ.